IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRZYSZTOF F. WOLINSKI,   No. CIV S-11-1932-GEB-CMK-P

    Plaintiff,

  vs.   ORDER

MIKE D. McDONALD, et al.,

    Defendants.

_____/

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Docs. 1, 9).[1]

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement

---

[1] Plaintiff has several other motions and filings also pending. Those motions and filing swill be addressed by separate order.

1

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff brings this action against fifteen individuals, plus several DOE defendants, for various alleged constitutional violations. His allegations range from unhealthy living conditions to inadequate medical care, sexual assault to denial of access to the court. These claims are against separate and distinct individuals, without any common link.

## II. DISCUSSION

Plaintiff is attempting to bring this action against several unrelated individuals on separate and unrelated claims. The Federal Rules of Civil Procedure allow a party to assert "as many claims as it has against an opposing party," but does not provide for unrelated claims against several different defendants to be raised in the same action. Fed. R. Civ. Proc. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). As far as the court can determine, plaintiff's claims against the various defendants are unrelated. Thus, those unrelated claims against several different defendants, should be separated into different actions.

///

1   Plaintiff also fails to provide any connection or link for some of the defendants.
2 To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link
3 between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't
4 of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person
5 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he
6 does an affirmative act, participates in another's affirmative acts, or omits to perform an act
7 which he is legally required to do that causes the deprivation of which complaint is made."
8 Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations
9 concerning the involvement of official personnel in civil rights violations are not sufficient.  See
10 Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth
11 specific facts as to each individual defendant's causal role in the alleged constitutional
12 deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

13   Furthermore, plaintiff names supervisory personnel as defendants, apparently
14 based on their position alone and not on any personal conduct.  Supervisory  personnel are
15 generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d
16 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).
17 A supervisor is only liable for the constitutional violations of subordinates if the supervisor
18 participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that
19 a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's
20 unconstitutional conduct because government officials, regardless of their title, can only be held
21 liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v.
22 Iqbal, 129 S. Ct. 1937, 1949 (2009).  When a defendant holds a supervisory position, the causal
23 link between such defendant and the claimed constitutional violation must be specifically
24 alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d
25 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of
26 supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents,

673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S. Ct. at 1948.

As to the specific claims the court can decipher from the complaint, the standards for each one will be outlined for plaintiff's benefit.  As discussed below, if plaintiff chooses to file an amended complaint, he will be required to choose which claims to proceed with in this action and which to raise in a separate action.  He cannot, however, proceed with all of his claims in this one action.

        A.    DUE PROCESS

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd. of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits.  See id.

Liberty interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v.

4

1 Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425
2 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or
3 in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47
4 (1983).

5        In determining whether state law confers a liberty interest, the Supreme Court has
6 adopted an approach in which the existence of a liberty interest is determined by focusing on the
7 nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the
8 Court has held that state law creates a liberty interest deserving of protection only where the
9 deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the
10 sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the
11 ordinary incidents of prison life." Id. at 483-84.  Prisoners in California have a liberty interest in
12 the procedures used in prison disciplinary hearings where a successful claim would not
13 necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th
14 Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not
15 result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v.
16 Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate
17 release from prison were cognizable under § 1983).

18        Where a prisoner alleges the deprivation of a liberty or property interest caused by
19 the unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983
20 if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch, 494 U.S. 113,
21 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-deprivation remedy
22 may be adequate even though it does not provide relief identical to that available under § 1983.
23 See Hudson, 468 U.S. at 531 n.11.  An available state common law tort claim procedure to
24 recover the value of property is an adequate remedy.  See Zinermon, 494 U.S. at 128-29.

25        Finally, with respect to prison disciplinary proceedings, due process requires
26 prison officials to provide the inmate with: (1) a written statement at least 24 hours before the

disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

        B.     ACCESS TO THE COURTS:

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right includes petitioning the government through the prison grievance process. See id. Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

1    As a jurisdictional requirement flowing from the standing doctrine, the prisoner
2 must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to
3 contemplated or existing litigation, such as the inability to meet a filing deadline or present a
4 non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).
5 Delays in providing legal materials or assistance which result in prejudice are "not of
6 constitutional significance" if the delay is reasonably related to legitimate penological purposes.
7 Lewis, 518 U.S. at 362.
8            C.    EIGHTH AMENDMENT (FORCE/SAFETY/MEDICAL):
9            The treatment a prisoner receives in prison and the conditions under which the
10 prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel
11 and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,
12 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of
13 dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102
14 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.
15 Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with
16 "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,
17 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only
18 when two requirements are met: (1) objectively, the official's act or omission must be so serious
19 such that it results in the denial of the minimal civilized measure of life's necessities; and (2)
20 subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of
21 inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison
22 official must have a "sufficiently culpable mind." See id.
23            When prison officials stand accused of using excessive force, the core judicial
24 inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or
25 maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);
26 Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as

opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).  The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9.  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

Similarly, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met:  (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if

1  harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

2  　　　　　In addition, deliberate indifference to a prisoner's serious illness or injury, or risks
3  of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429
4  U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and
5  mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or
6  illness is sufficiently serious if the failure to treat a prisoner's condition could result in further
7  significant injury or the "unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974
8  F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir.
9  1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the
10 condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's
11 daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.
12 See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

13 　　　　　The requirement of deliberate indifference is less stringent in medical needs cases
14 than in other Eighth Amendment contexts because the responsibility to provide inmates with
15 medical care does not generally conflict with competing penological concerns.  See McGuckin,
16 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to
17 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
18 1989).  The complete denial of medical attention may constitute deliberate indifference.  See
19 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical
20 treatment, or interference with medical treatment, may also constitute deliberate indifference.
21 See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also
22 demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

23 　　　　　Negligence in diagnosing or treating a medical condition does not, however, give
24 rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a
25 difference of opinion between the prisoner and medical providers concerning the appropriate
26 course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff's allegations raise several possible Eighth Amendment claims. Plaintiff alleges unsafe living conditions, excessive use of force (including sexual assault), and insufficient medical care. Although these allegations all may arise under the Eighth Amendment, they are not necessarily sufficiently related to be included in one action where they are against separate individuals.

### III. CONCLUSION

Plaintiff cannot proceed in this action on his complaint as currently written. There are too many unrelated claims to meet the pleading requirements of the Federal Rules of Civil Procedure. Plaintiff must choose which claims to proceed on in this action. He may then choose whether to file a separate action raising other claims. Plaintiff is cautioned that if he files an amended complaint again raising unrelated claims against different individuals, his complaint may be dismissed for failure to follow court rules and orders. See Local Rule 110.

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how

each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and

2. Plaintiff shall file a amended complaint within 30 days of the date of service of this order.

DATED:  November 15, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE